**[Cite as *In re H.F*, 2014-Ohio-4909.]**

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | : | JUDGES: |
| IN THE MATTER OF: | : | Hon. W. Scott Gwin, P.J. |
| H.F. | : | Hon. Patricia A. Delaney, J. |
| A.W. | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | |
| | : | |
| | : | Case No. 2014CA00088 |
| | : | 2014CA00089 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil appeal from the Stark County Court of Common Pleas, Juvenile Division, Case Nos. 2012JCV 01093, 2013JCV00779


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     November 3, 2014

APPEARANCES:

For - Appellee

LISA LOUY
STARK COUNTY JFS
221 Third Street S.E.
Canton, OH 44702

For - Appellant

DAVID L. SMITH
245 - 33rd Street N.W.
Canton, OH 44709

*Gwin, P.J.*

{¶1} Appellant M.W. ("Father") appeals from the May 2, 2014 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, which terminated his parental rights with respect to his minor children H.F. and A.W. and granted permanent custody of the children to appellee Stark County Department of Job and Family Services ("SCDJFS").

*Facts & Procedural History*

{¶2} M.W. is the father of H.F., born August 7, 2012, and A.W., born August 3, 2013. On November 6, 2012, SCDJFS filed a complaint of neglect and dependency with regard to H.F. The complaint alleged, in part, that there were admitted domestic violence issues between Father and A.F. ("Mother[1]"), and also cited concerns about Father's sobriety and drug abuse given his extensive criminal conviction history for drug abuse. After a shelter care hearing on November 7, 2012, the court ordered H.F. into the emergency custody of SCDJFS.

{¶3} On January 10, 2013, H.F. was adjudicated dependent after both parents stipulated to the finding of dependency and H.F. was placed into the temporary custody of SCDJFS. The court further found that the agency had made reasonable efforts to prevent the need for removal of the child from the home and approved and adopted the case plan. In the case plan Father was ordered to: obtain and maintain stable housing, obtain and maintain employment, complete an assessment at Quest and all recommendations, submit to drug testing twice weekly and/or as requested by the

---

[1] Mother filed a separate appeal. *In the Matter of H.F., A.W.*, 5th Dist. Stark No. 2014CA00093, 2014-Ohio-3899.

agency, complete a parenting assessment at Northeast Behavioral Health, and attend Goodwill Parenting upon the successful completion of substance abuse treatment.

{¶4} At a case review hearing on May 3, 2013, the case plan review packet was approved and adopted and the court made reasonable efforts and compelling reasons findings. The status quo was maintained. Father did not appear for the hearing.

{¶5} On August 3, 2013, Mother gave birth to A.W. On August 7, 2013, SCDJFS filed a complaint of neglect and dependency seeking temporary custody of A.W. After a shelter care hearing on August 7, 2013, the court ordered A.W. into the emergency temporary custody of SCDJFS. On October 2, 2013, A.F. was adjudicated dependent after both parents stipulated to the finding of dependency. The agency removed the allegations of neglect. Temporary custody of A.W. was granted to SCDJFS and a case plan was adopted.

{¶6} On September 25, 2013, SCDJFS filed a motion to extend temporary custody of H.F. because Father had just initiated contact with the agency. Father's case plan was amended and he was ordered to complete an anger assessment at Melymbrosia and complete any recommendations made. Both parents stipulated to the extension and the case plan. At a case review hearing on October 2, 2013, the trial court ordered all visitation between Father and the children suspended until he completed a Quest assessment, follow any recommendations from Quest, and maintained sobriety as evidenced by clean urine screens.

{¶7} On March 5, 2014, SCDJFS filed motions for permanent custody of both children. On April 14, 2014, Father and Mother separately filed motions to extend

temporary custody of both children.  Father stated he had no pending criminal cases and had made an appointment at Goodwill Parenting.  On April 24, 2014, the trial court conducted a trial on SCDJFS' motions for permanent custody.

{¶8}    At trial, Vicki Mitchell ("Mitchell"), the initial caseworker for H.F., testified that the agency became involved with the family after H.F.'s birth when Mother tested positive for marijuana.  There were additional concerns with domestic violence between the parents.   SCDJFS attempted to work voluntarily with the parents through the Alternative Response Unit.  However, because the parents were failing to follow through with services, SCDJFS filed its complaint.

{¶9}    Mitchell stated that in December of 2012, Father appeared for a visit with the children and appeared to be intoxicated.  The guard at the building confiscated alcohol from Father and he was not permitted to visit the children.  Mitchell testified that she gave Father a copy of the case plan and reviewed it with him.  On January 10, 2013, Father smelled strongly of alcohol and walked away when Mitchell attempted to talk with him and said he did not have time to talk with her.  Mitchell told him to go to Quest to submit urine screens and contact her about visitation; however, Father never called her.  When she attempted to call Father, his phone was disconnected.  Mitchell testified that on February 18, 2013, Mother stated she missed the previous day's class at Goodwill parenting because Father refused to leave her home, kicked her in the stomach, and would not allow her to leave the apartment for twelve hours.  Shortly after that incident, Mitchell testified that she received a call from Mother stating she was on a SARTA bus and Father was on the bus threatening and yelling at Mother.

{¶10} On June 27, 2013, Mitchell went to Mother's home and found Father entering her apartment with his own key. Mitchell found this concerning since Father had made no effort to complete case plan services. She again went over the case plan with him and had Father place the information about his case plan into his phone.

{¶11} Mitchell stated that since H.F. has been in the temporary custody of SCDJFS since January 10, 2013, H.F. has been in the temporary custody of SCDJFS more than twelve out of the last twenty-two months. Further, that as of August of 2013 when another case worker was assigned to the children, Father had done nothing to complete any case plan services.

{¶12} Dr. Aimee Thomas ("Thomas"), a psychologist at Northeast Ohio Behavioral Health, completed a parenting assessment with Father. Thomas testified Father's description of himself was not consistent with his lengthy criminal history. Thomas stated Father has antisocial personality disorder, narcissistic personality disorder, cannabis dependence, and probable alcohol dependence. Thomas testified that due to his narcissistic personality disorder, Father is more focused on his needs and not the needs of his children, cannot change his personality if he is not willing to acknowledge his problems, and that his cannabis dependence hinders his ability to learn to parent and/or to retain information from an anger management program. Thomas stated Father's history of domestic violence demonstrates that the children may become the target of this violence. In her report, Thomas stated that, as a result of his chronic criminal history, his lack of conscience, and his narcissism, his prognosis was "exceedingly poor" if he did not complete the recommendations she established.

{¶13} Thomas recommended the following with regards to Father: complete an intensive anger management program at Melymbrosia, avoid future contact with law enforcement officials, substance abuse treatment, gain employment and independent housing, then, after Father's anger and sobriety are managed, attend Goodwill Parenting and possible Intensive Child Interaction Program. Thomas testified Father had to manage his anger and maintain his sobriety before he could gain skills or parenting techniques. When asked about a particular anger management program Father attended in Alliance, Thomas stated this program was not intensive enough considering the level of anger presented by Father.

{¶14} Stacy Senff ("Senff"), an ongoing caseworker at SCDJFS, took over H.F.'s case in August of 2013 and was the caseworker for A.F.'s case. Senff testified that Father had the same case plan as in H.F.'s case except that it was amended in October to also add the requirement of anger management treatment for Father, specifically at Melymbrosia. On October 15, 2013, Senff accidentally happened upon Mother and Father waiting together at a bus stop in Alliance. On November 27, 2013, Senff received a call that Mother and Father were attempting to apply for public assistance and were stating that they lived together and had custody of the children, despite a no contact order for Mother and Father issued in Father's criminal case.

{¶15} Senff testified that Father has not substantially complied with case plan objectives. While he completed intake at Melymbrosia in October of 2013, Father went to treatment a few times, but never went back and informed her that he "fired" Melymbrosia. When asked about the Alliance anger management program attended by Father, Senff stated that the program does not comport with the requirements of the

case plan as it specifically requires him to go to Melymbrosia. Senff stated Father has not complied with substance abuse recommendations. Father did not complete his Quest assessment until February of 2014 and, when he did, he informed the assessor he had not used drugs since 2006, which was in direct conflict with his criminal record of multiple drug abuse convictions. Senff repeatedly asked Father to submit random drug screens, but Father never submitted when Senff asked. Father did complete two clean drug screens in February of 2014, but he chose the date and time of the drug screens. Senff testified that when she repeatedly asked Father to submit to random drug screens, he told her many times he would not submit because he "uses weed on a daily basis."

{¶16} Senff stated that on September 25, 2013 when she asked Father about a random drug screen, Father instantly became hostile and verbally abusive with her. Father later apologized to Senff for treating her like he would a girlfriend. Due to this incident, the trial court issued an order in October stating that Father could have no more visits with the children until he maintained his sobriety, including a Quest assessment and any recommended treatment and the completion of random drug screens. The visits were not reinstated because he failed to complete the recommended treatment to maintain his sobriety and submit to random drug screens. Senff stated Father last visited H.F. and A.W. on September 25, 2013, over ninety days prior to the April 24, 2014 trial. Senff testified that Father did go to Goodwill Parenting, but, to complete the program, he is required to have visitation with the children and since he had not complied with the treatment recommended by Quest, he could not complete the Goodwill Parenting program.

{¶17} Senff stated Father should not be given more time to work on his case plan because he is not willing stop abusing drugs and alcohol, has no relationship with his children, his general lack of progress in the case plan, and the reports from the service providers. Further, that the initial concerns of domestic violence and drug abuse have not been remedied. Father told Senff he was boxing in matches, but Senff stated she does not consider this a regular job. Senff stated that she returned many of Father's calls, but frequently could not reach him because the number he gave her did not work. Further, that Father's issue with the case plan is not due to any cognitive impairment because his primary issue with case plan compliance is continued abuse of drugs and alcohol and that he cannot address the other case plan services until he is sober.

{¶18} When Senff testified in the best interest portion of the trial, she stated that H.F. has no behavioral or medical issues. A.W. has reflux and is on a special formula but is otherwise healthy. The girls are placed together in a foster-to-adopt home. This is a newer home for them as their initial foster placement was an older couple who are not willing to adopt. The girls transitioned to their new home without issues and are doing very well there. SCDJFS did look into potential relative placements (a paternal relative and a maternal relative) but neither of those relatives were able to pass a home study and therefore could not be considered for placement.

{¶19} Senff testified the girls have no bond with Father and they do not know him. Senff stated that she believes that an order granting permanent custody of the children to SCDJFS would be in their best interests as the girls are thriving in their

current placement and the parents cannot provide them with a safe, stable, nurturing home.

{¶20} Cedrick Gooden ("Gooden") is a chemical dependency counselor at Quest. Father was referred to Gooden after it was determined he needed individual therapy due to him being a high risk and anger issues. Gooden testified that Father is supposed to see him once per week and has an appointment with Gooden every Monday. Father appeared for his first appointment on February 14, 2014. Subsequently, Father was not consistently attending and Gooden last saw Father on March 31, 2014. Out of nine weeks, Father missed five appointments and appeared for four appointments. Gooden testified that this is not substantial compliance with substance abuse treatment.

{¶21} Father testified that he has substantially complied with his case plan and the only reason he did not substantially comply quicker is because he thought Mother was completing her case plan. Further, it took him so long to start on his case plan because he was fighting criminal cases so he would jump in and out of his case plan while disputing his other cases. Father stated he has stable housing as he is living with his mother and is employed as a professional boxer. Father believes he has completed six negative urine screens and testified that he has not done drugs since 2006. Father admitted he has been charged with domestic violence five times and does not know why people are scared around him, especially women. Father testified he could complete his case plan if his motion for extension were granted because he thought Mother was going to get the kids back and when he found out she wasn't, he started

case plan services. Father assumed since Mother did not have a criminal record and he did, she would get the children.

{¶22} Father testified that Dr. Thomas was lying when she testified that he told her he was still in a relationship with Mother. Father stated Senff was lying when she testified that he told her he smoked weed every day. Father left Melymbrosia because someone there lied about him. Father testified that everybody but him lies. Father did not go to counseling because he was unmotivated and felt like he could not win. Father stated that he went to anger management classes in Alliance. However, on cross-examination, Father admitted he was doing this because it was court-ordered in his criminal cases and he gets a reduction of his fines in his criminal cases if he attends the class.

{¶23} On cross-examination, Father confirmed that he has the following convictions: in March of 2014, possession of marijuana and drug paraphernalia, in 2013, drug abuse, disorderly conduct, and menacing, in 2012, assault, in 2011, two counts of drug paraphernalia, criminal trespass, possession of drugs, possession of marijuana, criminal mischief, domestic violence, and drug abuse, in 2009, criminal trespass, in 2006, possession of cocaine and trafficking in cocaine, in 2005, drug abuse and possession of marijuana, in 2004, drug abuse and trafficking in cocaine. Father went to prison for two years in 2006 and for eleven months in 2004.

{¶24} In a report dated April 16, 2014, the children's Guardian Ad Litem "strongly supports" the agency's motion for permanent custody.

{¶25} Pursuant to a judgment entry filed on May 2, 2014, the trial court terminated Father's and Mother's parental rights and granted permanent custody of H.F.

and A.W. to SCDJFS. The trial court found that H.F. has been in the custody of SCDJFS for more than twelve months of the last twenty-two consecutive months. Further, that Father failed to remedy the conditions that led to the removal of the children. The trial court found the children could not be placed with either parent at this time or within a reasonable amount of time and that the children were abandoned by Father based upon the lack of contact for more than ninety (90) days. The trial court further found it is in the best interest of H.F. and A.W. that permanent custody be granted to SCDJFS. The trial court denied Father's motion for extension of temporary custody.

{¶26} Father appeals from the trial court's May 2, 2014 judgment entry and raises the following assignments of error on appeal:

{¶27} "I. THE JUDGMENT OF THE TRIAL COURT THAT APPELLANT ABANDONED THE MINOR CHILD WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶28} "II. THE COURT'S ORDER STATING THAT THE CHILDREN COULD NOT BE PLACED WITH ANY BIOLOGICAL PARENT AT THE TIME OF TRIAL OR WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

*Permanent Custody*

{¶29} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

**{¶30}** Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶31}** Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

**{¶32}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

**{¶33}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to

grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶34} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

I.

{¶35} Father first argues the trial court's finding that he abandoned H.F. and A.W. pursuant to R.C. 2151.414(B)(1) is against the manifest weight and sufficiency of the evidence. Father argues that he is now able to communicate with the children as he is in a sober state where visitation is appropriate. We disagree.

{¶36} For purposes of R.C. 2151.414(B)(1)(b), "abandoned" is defined by R.C. 2151.011(C), which provides that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

{¶37} Senff testified that Father's last contact with H.F. and A.W. was on September 25, 2013 and he had no further visits as of the trial held April 24, 2014. On October 4, 2013, the trial court suspended Father's visits with both children until he demonstrated a level of sobriety by completing a Quest assessment, any recommended treatment, and dropping clean random urine screens. Father admitted he failed to timely start his case plan because of his criminal cases and his thought that Mother was completing her case plan. Father did not go to Quest for an assessment until February 7, 2014, more than ninety days after his last visit with his children. Father provided two negative urine screens and a negative swab since August of 2012, but never tested at the agency's request as he chose the timing for the tests he did take. Senff testified that she repeatedly asked Father to submit to random drug screens. Gooden testified that after Father started substance abuse treatment in February of 2014, Father attended only half of the weekly sessions. Gooden stated that this is not substantial compliance with substance abuse treatment.

{¶38} Father could have begun visiting again by complying with the trial court's order of October 2013, but Father chose not to do so. Father intentionally chose to delay in starting his case plan services. As the statute defines "abandonment" as failure to make contact for more than ninety days, the trial court's finding that Father abandoned H.F. and A.W. is not against the manifest weight or sufficiency of the evidence. Father's first assignment of error is overruled.

II.

{¶39} Father argues the trial court's determination that the children could not be placed with either parent within a reasonable time is against the manifest weight and

sufficiency of the evidence. Father contends he has housing and employment and is actively engaged in case plan services.

{¶40} We first note that the trial court determined that, pursuant to R.C. 2151.414(B)(1)(d), H.F. has been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months. Mitchell testified that H.F. was placed in the temporary custody of SCDJFS on January 10, 2013 and, as of the hearing date of April 24, 2014, H.F. was in the custody of the agency for more than twelve out of the last twenty-two months.

{¶41} As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni,* 5th Dist. Tuscarawas No. 2007 AP 0041, 2007-Ohio-5805. Therefore, because Father has not challenged the twelve of twenty-two month finding, we would not need to address the merits of this assignment of error with respect to H.F. *In re N.D.*, 5th Dist. Stark No. 2010CA00334, 2011-Ohio-685. This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody of H.F. *In re Calhoun,* 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458.

{¶42} However, with regards to A.W. and even if we considered Father's argument with regards to H.F., the trial court did not err in determining that the children cannot be placed with Father at this time or within a reasonable period of time.

{¶43} Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors

enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents. The relevant portions of R.C. 2151.414(E) are as follows:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. * * *

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code. * * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child

when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child * * *

(10) The parent has abandoned the child.

{¶44} A review of the record supports the trial court's conclusion that H.F. and A.W. cannot be placed with Father within a reasonable time. Senff stated that Father should not be given more time to complete the case plan because he is not willing to stop abusing drugs and alcohol, has no relationship with his children, the lack of progress in his case plan, and due to reports from the service providers. Senff testified that Father has not remedied the initial concerns of domestic violence and drug abuse that were why the children were removed. As testified to by Mitchell and Senff, Father initiated no case plan services until several months into the case and then failed to substantially comply with case plan services. Father admitted that he knew about the requirements of the case plan and that he did not start his case plan services in a timely manner because he was working on his criminal cases and because he thought Mother was going to get the children. However, temporary custody was extended once in September of 2013 by stipulation due to the fact that Father had just initiated case services and Father still failed to take any action until February of 2014 to address his issues with substance abuse and attain visitation with his children that was suspended in October of 2013 due to his inappropriate behavior at a visit.

{¶45} Father failed to complete the anger management program at Melymbrosia as required by this case plan and as recommended by Dr. Thomas. Senff testified that Father told her he "fired" Melymbrosia. Both Senff and Dr. Thomas testified that the program Father attended in Alliance was not an intensive anger management program

as required by the case plan.  Father admitted that he attended the anger management program in Alliance as a part of a requirement for his criminal cases and to reduce his fines in the criminal cases.  Further, though Father completed a Quest assessment for substance abuse in February of 2014, when Father was recommended individual treatment to the fact that he was too high-risk for a group situation, Father attended only half of his weekly treatment meetings.  Senff and Gooden testified this is not "substantial compliance" with substance abuse treatment.  Senff stated that she repeatedly asked Father to submit random drug screens, but he continually failed to do so.  The two negative urine screens and one negative swab that Father provided were all completed at times Father chose, not at the agency's request.  As detailed above, Father failed to visit his children since September of 2013 as he failed to comply with the magistrate's order requiring substance abuse treatment and negative random drug screens prior to visitation.  Father could have begun visiting again at any time by complying with the order, but chose not to do so.  Due to this lack of visitation, Senff testified that Father has no relationship or bond with either of the children.  As testified to by Mitchell and Senff, Father and Mother continued to remain involved in a domestically violent relationship.

{¶46} Testimony from Dr. Thomas shows Father has significant mental health and substance abuse issues.  Father's extensive substance abuse issues are also demonstrated by Father's extensive and continual criminal record.  The trial court found Father's testimony that he had not used drugs since 2006 not credible and directly contradictory to his criminal history and his reports to Dr. Thomas.  Dr. Thomas concluded Father's prognosis was exceedingly poor unless he completed her

recommendations, including substance abuse treatment and intensive anger management treatment at Melymbrosia. As discussed above, Father did not complete the Melymbrosia program or substantially comply with substance abuse treatment. Dr. Thomas also expressed concern that, given Father's history of domestic violence, the children may become the target of this violence. Dr. Thomas further testified that Father had to manage and maintain his sobriety before he could gain any skills or parenting techniques.

{¶47} We find there is competent, credible evidence to support the trial court's finding that the children cannot be placed with Father within a reasonable amount of time because the delay in completing the case plan objectives and the failure to reduce the risks posed when the children were first removed are directly attributable to the actions and inactions of Father. Father's second assignment of error is overruled.

{¶48} Based on the foregoing, we find that the trial court's determination that Father abandoned the children and that the children could not be placed with him within a reasonable time or should not be placed with him was based upon competent and credible evidence and is not against the manifest weight or sufficiency of the evidence. Father's assignments of error are overruled and the May 2, 2014 judgment entry of the Stark County Common Pleas Court, Juvenile Division, is affirmed.

By Gwin, P.J.,

Delaney, J., and

Baldwin, concur